UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MCDANIEL,

      Petitioner,                                  Case Action No. 14-CV-12380

v.                                           HON. BERNARD A. FRIEDMAN

DAVID BERGH,

      Respondent.
_____/

**OPINION AND ORDER DENYING THE APPLICATION FOR A WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

        This matter is presently before the Court on petitioner's application for a writ of

habeas corpus.  Petitioner challenges his convictions for armed robbery, felon in possession of a

firearm, and use of a firearm during the commission of a felony.  He raises these claims: the

prosecutor withheld evidence in violation of *Brady*, the trial court violated petitioner's right of

confrontation, and trial counsel rendered ineffective assistance.  Respondent has filed an answer

arguing that petitioner's ineffective assistance of counsel claim is procedurally defaulted and that

all of the claims are meritless.  For the following reasons, the Court shall deny the petition.

**I.**       **Background**

        Petitioner's convictions arise from the robbery of Tyrone O'Neal.  O'Neal, a postal

worker, testified that on April 21, 2009, he was delivering mail in Detroit when he saw a person he

later identified as petitioner walking in the middle of the street.  Petitioner approached O'Neal,

pointed a gun at O'Neal's chest while demanding that O'Neal empty his pockets.  O'Neal emptied

the contents of his pockets onto the ground, fled, and called 911.  A few days later, O'Neal met with

a police sketch artist who created a composite picture which was distributed in the community.

Police received a tip that the person in the sketch was petitioner.  On the basis of this tip, O'Neal was shown a photographic lineup which included a photograph of petitioner.  O'Neal picked petitioner out of the lineup and identified him as the robber.

Gregory Bridges, a service representative for DTE Energy, was offered as a Rule 404(b) witness.  He testified that he was also approached by a man on April 21, 2009, in Detroit. The man pointed a gun at Bridges and told Bridges to empty the contents of his pockets.  Bridges later viewed a photographic lineup and identified petitioner as the perpetrator.

Postal Inspector Christopher Martin testified about the course of the investigation. He created a reward poster using a copy of the police sketch of the suspect in the O'Neal robbery. The reward poster was distributed within a six-block radius of the robbery location.  Two tips were received in response to the poster.  On April 23, 2009, an anonymous tipster informed police that someone who matched the police sketch frequently visited a home on State Fair Avenue, not far from the location of the O'Neal robbery.  Police set up surveillance of the home and ultimately recovered a black jacket resembling one worn by the perpetrator as described by O'Neal, and a spent shell casing from inside the home. Inspector Martin received a tip from a confidential informant on April 29, 2009, identifying Petitioner as the robber.  Petitioner was arrested on April 30. 2009.

Petitioner testified in his own defense.  He denied that he was the person who robbed O'Neal or Bridges.

Following a jury trial in Wayne County Circuit Court, petitioner was convicted of armed robbery, felon in possession of a firearm, and use of a firearm during the commission of a felony.  On October 16, 2009, he was sentenced as a second habitual offender to 9 to 20 years' imprisonment for the armed robbery conviction, 2 to 7-1/2 years' imprisonment for the felon-in-

possession conviction, and 2 years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) pretrial identification procedures unduly suggestive; (ii) composite sketch improperly admitted; (iii) ineffective assistance of counsel; (iv) prosecutorial misconduct; (v) jury instruction error; and (vi) other act evidence improperly admitted.  The Michigan Court of Appeals affirmed petitioner's convictions.  *People v. McDaniel*, No. 294821, 2011 WL 519956 (Mich. Ct. App. Feb. 15, 2011).  Petitioner sought leave to appeal in the Michigan Supreme Court raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal. *People v. McDaniel*, 490 Mich. 859 (2011).

Petitioner then filed a motion for relief from judgment in the trial court, claiming that the prosecutor improperly withheld the name of the confidential informant, that admission of statements by the confidential informant violated the Confrontation Clause, and that counsel was ineffective in failing to object to this testimony.  The trial court denied the motion.  *People v. McDaniel*, No. 09-012025 (Wayne Cty. Cir. Ct. July 16, 2012). (ECF No. 9-17).  Both Michigan appellate courts denied leave to appeal.  *People v. McDaniel*, No. 316008 (Mich. Ct. App. Oct. 4, 2013); *People v. McDaniel*, 495 Mich. 949 (Mich. Feb. 28, 2014).

Petitioner then filed the instant habeas petition.  He raises these claims:

I.     Petitioner was denied due process of law and equal protection of law by prosecution's misconduct, violating the *Brady* rule of disclosure of relevant and material evidence used against Petitioner to convict.

II.    The trial court denied Petitioner due process by the court's abuse of discretion ...violating Petitioner's right to confrontation, violating substantial rights to a fair trial resulting in a miscarriage of justice.

III.   Petitioner had ineffective assistance of counsel at trial by failing to make proper objections to hearsay and failure to make appropriate motions.

3

## II.     Legal Standards

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's

4

application must have been 'objectively unreasonable.'" *Id.* at 520-21 (*quoting Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

> Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (internal quotation and citation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. However, this "does not require citation of [Supreme Court] cases - indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Further, "while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007.

Finally, a federal habeas court must presume the correctness of state court factual determinations, *see* 28 U.S.C. § 2254(e)(1), and a petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Put

differently, only factual determinations that are "objectively unreasonable in light of the evidence presented in the state-court proceeding" will be overturned. *McKinney v. Ludwick*, 649 F.3d 484, 488 (6th Cir. 2011).

## III. Discussion

Petitioner's three claims for habeas corpus relief center on postal inspector Christopher Martin's testimony regarding a confidential informant. Inspector Martin testified that, in response to a reward poster containing a police sketch of the suspect in O'Neal's robbery, law enforcement received a tip from a confidential informant identifying petitioner as the perpetrator. Petitioner argues first that the failure to disclose the identity of the confidential informant violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963). He also contends that admission through Inspector Martin of the confidential informant's identification of him violated his rights under the Confrontation Clause. Finally, Petitioner argues that defense counsel's failure to object to this testimony constituted ineffective assistance of counsel.

### A. Claim One: *Brady* Violation

Postal Inspector Christopher Martin testified that he received a tip about petitioner from a confidential informant on April 29, 2009, and that the confidential informant identified petitioner as the perpetrator. Petitioner argues that the failure of police to release the identity of the informant violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963)

To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the State, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A defendant does not have to show that

6

"disclosure of the evidence would have ultimately led to an acquittal"; instead, he must "establish that in the absence of the evidence he did not receive a fair trial, 'understood as a trial resulting in a verdict worth of confidence.'" *Gumm v. Mitchell*, 775 F.3d 345, 363 (6th Cir. 2014) (*quoting Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).  The identity of an informant constitutes *Brady* material only when the informant would offer exculpatory or impeaching information to the defense.  *Downs v. Sec'y, Fla. Dept. of Corrs.*, 738 F.3d 240, 260-61 (11th Cir. 2013).  *See also United States v. Streit*, 962 F.2d 894, 900 (9th Cir. 1992).

Petitioner raised this claim for the first time on state-court collateral review.  The trial court denied the claim in a summary fashion.  Despite the lack of a reasoned opinion, the state court's decision is nevertheless entitled to deference under the AEDPA.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 327 (6th Cir. 2012).

Petitioner has failed to show how revealing the identity of the informant would have been exculpatory.  The confidential informant responded to the telephone number on the police sketch poster, which, in turn, prompted Inspector Martin to acquire additional information about petitioner.  Petitioner offers no argument, only conclusory speculation, that discovery of the identity of the informant would have transformed this inculpatory informant-related information to something favorable to the defense.  There is simply no basis for concluding that disclosure of the informant's identity would have created a reasonable probability that the result of the proceeding would have been different.  Habeas relief is denied on this claim.

   **B.**   **Claim Two: Confrontation Clause**

Petitioner's second claim alleges that the testimony of Inspector Martin regarding the confidential informant violated his rights under the Confrontation Clause.  On cross-examination,

Inspector Martin testified as follows:

| | |
|---|---|
| Inspector Martin: | I identified Christopher McDaniels through anonymous tip. |
| Defense counsel: | Okay.  Anonymous tip.<br>And how did that anonymous tip come to you? |
| Inspector Martin: | Through our National Law Enforcement Center. |
| Defense counsel: | Okay.  And did somebody call and give you the name Christopher McDaniel, yes or no? |
| Inspector Martin: | Yes. |
| Defense counsel: | Okay.  Somebody called and told you that Christopher McDaniel did the robbery, isn't that true, sir? |
| Inspector Martin: | That's correct. |
| Defense counsel: | And that's the only way you got a Christopher McDaniel, isn't that correct? |
| Inspector Martin: | That's correct. |
| Defense counsel: | After that, you don't connect Mr. McDaniels [in] any way to this robbery, any way to this incident absent an anonymous tip. |

Tr. 9/24/09 at 21-22 (ECF No. 9-5, Pg. ID 200-201).

The Confrontation Clause provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  The right to a trial by jury is based on the belief "that the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Id*. at 405 (quotation marks omitted).

8

In this case, the testimony about the information provided by the confidential informant was elicited by defense counsel.  It appears defense counsel elicited the testimony to highlight the lack of any physical evidence leading police to identify petitioner as a suspect.  The Confrontation Clause is not implicated when defense counsel elicits the hearsay testimony.  *See United States v. McKenzie*, 532 F. App'x 793, 797 (10th Cir. 2013).

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).  Thus, "admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause.  Instead, the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted." *United States v. Pugh*, 405 F.3d 390, 399 (6th Cir. 2005).  *Accord United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004).  It appears that defense counsel elicited this testimony to explain the course of the police investigation, rather than to show that petitioner was the robber.  It was not, therefore, offered to prove the truth of the matter asserted.

Finally, even if admission of this testimony violated the Confrontation Clause, the error was harmless.  A violation of the Confrontation Clause is subject to harmless error analysis.  *See Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Coy v. Iowa*, 487 U.S. 1012, 1021-22 (1988); *Delaware v. Van Arsdall*, 475 U.S. at 681-84 (1986).  On habeas review, to determine whether an error is harmless a court must ask whether the error "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  Factors to be considered in determining whether a Confrontation clause error was harmless under *Brecht* include: "(1) 'the importance of the witness' testimony in the prosecution's case,' (2)

9

'whether the testimony was cumulative,' (3) 'the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,' (4) 'the extent of cross-examination otherwise permitted,' and (5) 'the overall strength of the prosecution's case.'" *Vasquez*, 496 F.3d at 574 and 574 n.8 (6th Cir. 2007) (*quoting Delaware v. Van Arsdall*, 475 U.S. at 684).

The *Van Arsdall* factors support a finding that the admission of Inspector Martin's testimony about the confidential informant did not have a substantial impact on the jury's verdict. O'Neal identified petitioner as the person who robbed him. O'Neal viewed petitioner from a distance of approximately seven feet, during daylight hours. He viewed petitioner for longer than an instant. O'Neal testified that his view of petitioner's face was unobstructed during the robbery. O'Neal identified petitioner from a photographic line up and testified that he did so with 100% certainty that petitioner was the robber. In addition, the DTE employee Bridges also identified the person in the police sketch as the same person who robbed him, and identified petitioner in a photographic lineup as the person who robbed him. He also identified petitioner at trial as the perpetrator. Given the strength of this testimony implicating petitioner, the Court concludes that the brief reference to the confidential informant's tip did not have a substantial or injurious effect on the jury's verdict.

### C.    Claim Three: Ineffective Assistance of Trial Counsel

Finally, petitioner argues that his defense counsel was ineffective in failing to move to suppress testimony that the confidential informant's tip led police to consider petitioner as a

suspect and ultimately led to his being placed in a photo lineup from which he was identified by two victims.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

"The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). This Court already determined that the admission of this testimony, even if in error, was harmless. Because the admission of this evidence was harmless error, petitioner cannot satisfy *Strickland*'s prejudice prong. *See Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004).

**IV.    Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed in a habeas matter unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability. Accordingly,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied and that petitioner may not proceed on appeal in forma pauperis.

S/ Bernard A. Friedman_____
Dated: April 6, 2017                    BERNARD A. FRIEDMAN
       Detroit, Michigan               SENIOR UNITED STATES DISTRICT JUDGE